## A91A0196. EDWARDS v. THE STATE.
(408 SE2d 802)

McMurray, Presiding Judge.

Defendant was charged in a 76 count indictment with 48 counts of burglary, 24 counts of entering a motor vehicle without authority and with intent to commit a theft therein, two counts of theft by taking, one count of theft by conversion and one count of giving a false name. Defendant pleaded not guilty and moved to sever the offenses for separate trials. An order on the motion to sever was not entered, but a 25 count indictment was entered and it reflects several charges of the original indictment, i.e., entering 24 motor vehicles without authority and with intent to commit a theft therein (Counts 1 through 24) and theft by taking (Count 25). The charges of the 25 count indictment were tried before a jury and defendant was found guilty of entering a van belonging to Clifford Parker (Count 12), entering eight motor vehicles belonging to Edd Kirby Chevrolet Incorporated (Counts 13-19) and theft by taking property belonging to Edd Kirby Chevrolet Incorporated (Count 25). Defendant was found not guilty on the remaining counts of the 25 count indictment. This appeal followed the denial of defendant's motion for new trial. Held:

1. Defendant contends the trial court erred in denying his motion for mistrial after it was discovered that five jurors read a newspaper article which placed defendant's character in issue.

At the beginning of the second day of trial, the following transpired: "[DEFENSE COUNSEL]: Your honor, I have a motion to make. . . . [W]hen I got home last night I received my copy of the Daily Citizen News, . . . and I looked on the left part of the front page, and I noticed 'In the News — Superior Court Begins' And I'd like to read this into the record. 'Among the trials expected this week in Whitfield County Superior Court are cases of two suspected armed robbers plus one man accused of multiple thefts. Assistant District Attorney Kermit McManus said . . . [t]he trial of Randy Sherrill [defendant], also known as Randy Edwards, twenty-three, of Dalton is expected to begin today. Edwards is to be tried on multiple theft charges including Theft by Taking and Theft by Receiving. Though charged with more than sixty counts of theft, McManus said Sherrill will only be tried on about half the charges today, with the others to be tried at a later date. . . .'

"Your Honor, I suspect, although I'm not able to prove, that this

story was planted on purpose. Apparently the District Attorney's office will sell their soul for a conviction in this case. And I think they're becoming perilously close. This is not the first time I've seen such as this in the paper on the day that court begins or just before. But what we have here is just like an infection. We try to cut it out now for the jury, we may well spread it. . . . [The article is] not only not factual, to my knowledge [defendant] is not charged with more than sixty counts of theft. He is not charged with even one count of Theft by Receiving here that I know of. And to publish this that he would only be tried on about half the charges today, with the others to be tried at a later date, flies right in the face of all of the efforts that this Court has had, including instructing the District Attorney's office on the prophylactic means to be used on the indictment. Your Honor, I move for a mistrial."

The State's Attorney responded, "Your Honor, I was not aware of the article. I didn't read the paper last night. I didn't see it myself until [defense counsel] mentioned it this morning. We just move that it is not grounds for a mistrial in this case. If there were any curative instructions that the Court would care to give in regard to newspaper articles that may be printed in relation to this case or any other case involving criminal matters, would be fine to cure the record and cure any instance in this case that might be prejudicial to the defendant."

The trial court admonished the office of the District Attorney of the Conasauga Judicial Circuit for commenting on pending criminal cases and summoned the jury, giving instructions and making inquiry as follows: "THE COURT: Good morning, ladies and gentlemen. . . . I want to ask the jury whether or not any of you read an article or several paragraphs that appeared in yesterday's newspaper. I don't want you to tell me what it was. I just want to have a — and it referred to this case. I want to know if any of you read it? (Whereupon, four jurors indicate by raising their hands.) THE COURT: The Court sees four hands. MALE JUROR: Is that the one that was on the front page that — THE COURT: Yeah. Five. The article was inaccurate in almost every respect. I instruct the jury and particularly those of you who read the article that this defendant is on trial for these charges that have been stated to the jury. He is not on trial for anything else. That article should be given no weight by this jury whatsoever. This case depends upon the evidence that is presented from the witnesses who take the stand and testify and any exhibits that are admitted. You are to consider nothing else in determining whether or not the State carries its burden of proving this defendant guilty beyond a reasonable doubt. Now, I want to know whether you five jurors who have read the article will be able to follow that instruction, ignore that inaccurate article and give it no weight whatsoever in consideration. If you believe you will not be able to do that, I would like to see your

hand raised so that I can pursue that further. (No indication from the jurors.) THE COURT: I see no hand raised, and the Court concludes by that that you all will be able to put that out of your minds. I instruct you that you are not to discuss the contents of that article with any other jurors who fortunately did not read it. It should never have been in the paper. The District Attorney's office should have known better than to make any comments, and certainly should not have made any inaccurate comments to the paper. Now, in the future I instruct you that if there are other articles in the paper concerning this case, or if there is anything on the radio or the television, although I can't imagine that there will be, you are not to listen to, read or watch any of those matters. You can save them and when you get through you can read them later if you want to. But don't read them now, because it's not fair to the parties in the case that you be exposed to information that comes to you other than from this witness stand where both sides are present and both sides have an opportunity to cross-examine and examine the witnesses who are giving testimony. Now, after today, if there are future articles, it may be necessary for the Court to again ask you similar questions. And I'm sure that you will all at that time be in a position to say that you have not disobeyed the Court's instructions which I have just given you and that you have not read any such articles. And then we would not need to go further and inquire to make sure that you can put those out of your mind. All right, counsel approach the bench."

The State's alleged misconduct is not an issue, the controlling issue is whether a mistrial was essential to the preservation of defendant's right to a fair trial. *Whiteley v. State*, 188 Ga. App. 129 (1), 131 (372 SE2d 296).

" 'The trial court has a broad discretion in passing on motions for mistrial, and its ruling will not be disturbed by the appellate courts unless it appears that there has been a manifest abuse of discretion and that a mistrial is essential to the preservation of the right to a fair trial. *Gasaway v. State*, 137 Ga. App. 653, 657 (224 SE2d 772); *Jones v. State*, 128 Ga. App. 885, 886 (198 SE2d 336). Where a motion for mistrial is made on the ground of inadmissible matters being placed before the jury, the corrective measure to be taken by the trial court also is largely a matter of discretion, and where proper corrective measures are taken and there is no abuse of that discretion, the refusal to grant a mistrial is not error.' *Bradham v. State*, 148 Ga. App. 89, 94-95 (250 SE2d 801)." *Grayson v. State*, 159 Ga. App. 138, 139 (1) (282 SE2d 755).

In the case sub judice, the trial court informed the jury that the newspaper article was inaccurate; instructed the jury to disregard the article and rebuked the State's attorney's office for its alleged misconduct. See OCGA § 17-8-75. The trial court also informed the jury that

the article had no evidentiary value and emphasized that "defendant is on trial for these charges that have been stated to the jury [and that he] is not on trial for anything else." These instructions and the affected jurors' indication that they could "ignore that inaccurate article and give it no weight whatsoever . . ." support a conclusion that the jurors' exposure to the newspaper article did not deprive defendant of a fair trial. Consequently, we cannot say the trial court abused its discretion in denying defendant's motion for mistrial. *Stanley v. State*, 250 Ga. 3, 4 (2) (295 SE2d 315). See *Hampton v. State*, 179 Ga. App. 14 (345 SE2d 117), warning that prosecutorial misconduct may sometimes result in a mistrial and may even bar subsequent prosecution of a defendant for the same offense.

2. Defendant contends the trial court erroneously denied his motion for mistrial after a law enforcement officer from the Dalton Police Department testified that an investigator from the Murray County Sheriff's Department went with him to defendant's home. Defendant argues that this testimony inappropriately "brought in other investigations relating to the severed counts" because "[n]one of the counts being tried related to incidents in Murray County."

"Our duty as an appellate court is to correct errors alleged to have been made at trial by the trial court and not to manufacture them. *Finch v. State*, 138 Ga. App. 668, 672 (226 SE2d 779)." *Jones v. State*, 181 Ga. App. 651, 653 (2) (353 SE2d 593). In the case sub judice, there is nothing to indicate that the investigator from the Murray County Sheriff's Department went to defendant's home with the officer from the Dalton Police Department to investigate crimes other than those charged in the 25 count indictment. Defendant merely speculates that this testimony had a malignant effect upon the jury. See *McClendon v. State*, 170 Ga. App. 790 (318 SE2d 145). This enumeration is without merit.

3. Defendant contends the trial court erred in denying his motion for mistrial after the accomplice impermissibly placed defendant's character in issue.

The pertinent portion of the accomplice's testimony was as follows: "[STATE'S ATTORNEY:] At the time that you met [defendant], where were you living out there in Oregon? [THE ACCOMPLICE:] Nowhere, really. [STATE'S ATTORNEY:] Okay. How did you decide to come to Dalton? [THE ACCOMPLICE:] Just wasn't planning on it. [Defendant] was going to Tennessee. [STATE'S ATTORNEY:] How'd you end up leaving Oregon? How'd you decide on leaving the Portland area? [THE ACCOMPLICE: Defendant] said he had some charges or other stuff —" Defense counsel then objected and moved for a mistrial. The trial court denied the motion for mistrial, but offered to instruct the jury "that the defendant is on trial for these 25 counts and he's not charged with anything else." Defense

counsel refused the curative instructions and stated, "I would say that curative instructions such as that would not cure it. For the record, I renew my motion for mistrial."

In passing on a motion for mistrial because of an improper remark before the jury, " 'the trial judge may take such action as in his judgment will prevent harm to the defendant, and a new trial will not be granted unless it is clear that such action failed to eliminate the statement from consideration by the jury.' *Watkins v. State*, 237 Ga. 678, 682-683 (229 SE2d 465) (1976)." *Hoerner v. State*, 246 Ga. 374, 375 (4) (271 SE2d 458). In the case sub judice, we find no error in the denial of defendant's motion for mistrial. The trial court attempted to eliminate the accomplice's unresponsive statement from the jury's consideration, but defense counsel refused the instructions and thereby acquiesced in the denial of his motion for mistrial. See *Fitzgerald v. State*, 193 Ga. App. 76 (4) (386 SE2d 914). This enumeration is without merit

4. Defendant contends there was insufficient evidence to support the jury's guilty verdicts, arguing that there was no evidence to corroborate the accomplice's testimony that he and defendant committed the crimes charged in Counts 12 through 19 and Count 25 of the indictment.

To sustain a conviction on an accomplice's testimony, there must be corroborating circumstances which independently connect defendant to the crime charged. *Castell v. State*, 250 Ga. 776, 780 (1c) (301 SE2d 234). However, " 'the corroborating evidence need not of itself be sufficient to warrant a conviction of the crime charged. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict. (Cit.)' *Castell v. State*, 250 Ga. 776[, supra]. '(S)ufficient corroboration may consist of either direct or circumstantial evidence which connects the defendant with the crime, tends to show his participation therein, and would justify an inference of the guilt of the accused independently of the testimony of the accomplice. (Cits.)' *Gunter v. State*, 243 Ga. 651 (2) (256 SE2d 341) (1979)." *Howard v. State*, 181 Ga. App. 187, 188 (351 SE2d 550).

In the case sub judice, the accomplice testified that he and defendant committed the crimes charged in the indictment and that defendant's employment as a security guard enabled them to gain access to the property described in Counts 13 through 19 and Count 25 of the indictment. This testimony was corroborated by independent evidence showing that defendant was employed as a security guard at the time of the crimes charged in Counts 13 through 19 and Count 25 of the indictment and that defendant was then assigned to protect the property described in those counts of the indictment. This evidence and evidence showing that defendant was in possession of

property taken from the motor vehicle described in Count 12 of the indictment is sufficient to corroborate the accomplice's testimony that defendant committed the crimes charged in Counts 12 through 19 and Count 25 of the indictment. In other words, the evidence was sufficient to authorize the jury's finding that defendant was guilty, beyond a reasonable doubt, of the crimes charged in Counts 12 through 19 and Count 25 of the indictment. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). This enumeration is without merit.

*Judgment affirmed. Sognier, C. J., and Andrews, J., concur.*

DECIDED JUNE 26, 1991 —
RECONSIDERATION DENIED JULY 23, 1991.

*Waycaster, Corn, Murray & Morris, Cynthia N. Johnson*, for appellant.

*Jack O. Partain III, District Attorney, Todd L. Ray, Assistant District Attorney*, for appellee.